UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BOSS HOGGS BBQ, LLC, <br> Plaintiff, <br> vs. <br> MARION COUNTY PROSECUTOR'S <br> OFFICE, et al., <br> Defendants. | 1:10-cv-1318-TWP-TAB |

**REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS**

**I.     Introduction**

This case centers around Indiana Code § 35-45-5-4, which provides that "when a public utility is notified by a law enforcement agency acting within its jurisdiction that any service, facility, or equipment furnished by it is being used or will be used to violate this section, it shall discontinue or refuse to furnish that service, facility, or equipment." Pursuant to this statute, the Marion County Prosecutor's Office sought to disconnect Plaintiff's utilities, but quickly found itself in the midst of litigation. Plaintiff filed this action seeking to prevent the prosecutor's office from disconnecting its utilities as well as alleging due process and equal protection violations. Defendants now move for dismissal, arguing that Plaintiff improperly named certain parties, failed to meet justiciability requirements, and did not plead plausible claims upon which relief can be granted. For the reasons below, the Magistrate Judge recommends that Defendants' motions to dismiss [Docket Nos. 62, 68] be granted in part and denied in part.

## II.     Background

The following facts, alleged in the second amended complaint, are assumed as true for purposes of this motion. Plaintiff operates a barbeque restaurant at 1502 Columbia Avenue, Unit A. [Docket No. 54 at 2.] On September 22, 2010, the Indianapolis Metropolitan Police Department raided and discovered an illegal gambling operation at 1502 Columbia Avenue, Unit B. [*Id.*] Plaintiff denies any involvement with the illegal gambling operation, asserting that Unit A is unrelated to Unit B. [*Id.*] Also on September 22, 2010, a Marion County deputy prosecutor, on behalf of the Indianapolis Metropolitan Police Department, sent a letter to Indianapolis Power and Light and the Department of Waterworks requesting that Plaintiff's electrical power and water be disconnected pursuant to Indiana Code § 35-45-5-4(c). [*Id.*] Plaintiff received a duplicate copy of the letter, although it was "unaccompanied by an advertisement of rights available to contest the termination of utility services . . . ." [*Id.* at 3.] Additionally, the gambling operation was a "peashake house," a form of illegal gambling "predominately patronized and owned by African Americans." [*Id.*] A "comprehensive review . . . of all gambling arrests and prosecutions over the last several years shows that virtually all gambling arrests and prosecutions involve peashake houses." [*Id.* at 3–4.] "The police reports consistently demonstrate that only peashake houses are targeted for arrest and prosecution." [*Id.* at 4.]

From these allegations, the second amended complaint asserts that (1) the Marion County Prosecutor's Office is not a "law enforcement agency" under Indiana Code § 35-45-5-4 and therefore may not legally request that Plaintiff's utilities be shut off, (2) Indiana Code § 35-45-5-4 is unconstitutional because it does not require notice in violation of the Due Process

Clause, (3) Defendants failed to provide an "advertisement of rights" in violation of the Due Process Clause, and (4) the illegal gambling operation is the victim of race-based prosecution that violates the Equal Protection Clause. [Docket No. 54.] As noted, Defendants assert that Plaintiff improperly named certain parties, failed to meet justiciability requirements, and did not plead plausible claims upon which relief can be granted.

## III. Discussion

### A. Improper parties

#### 1. *Official-capacity suits*

Defendants argue that Chief Ciesielski and Governor Daniels in their official capacities were improperly named in this lawsuit. [Docket No. 63 at 15; Docket No. 69 at 2.] The Supreme Court has explained that municipalities are to be included among those persons to whom 42 U.S.C. § 1983 applies. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). "Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). However, since municipalities are persons under § 1983, "[t]here is no longer a need to bring official-capacity actions against local government officials . . . [because] local government units can be sued directly for damages and injunctive or declaratory relief." *Id.* at 167 n.14. Since Ciesielski is a local government official, suing Ciesielski in his official capacity is improper under § 1983.

With respect to state officials, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989). Thus, "neither a State nor its officials acting in their

3

official capacities are 'persons' under § 1983." *Id.* Because Daniels is a state official, Daniels in his official capacity is an improper party under § 1983.[1] Therefore, the Magistrate Judge recommends that Defendants' motions to dismiss be granted to the extent that Ciesielski and Daniels should be dismissed in their official capacities.

    2.    *Personal-capacity suits*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law." *Graham*, 473 U.S. at 165. The second amended complaint does not assert that Ciesielski or Daniels took any action, let alone actions under the color of state law. Therefore, the Magistrate Judge recommends that Defendants' motions to dismiss be granted to the extent that Ciesielski and Daniels be dismissed in their personal capacities.

    **B.**    **Declaratory relief**

Indiana Code § 35-45-5-4(c) provides that "when a public utility is notified by a law enforcement agency acting within its jurisdiction that any service, facility, or equipment furnished by it is being used or will be used to violate this section, it shall discontinue or refuse to furnish that service, facility, or equipment . . . ." Plaintiff contends that the prosecutor's office is not a "law enforcement agency" under Indiana Code § 35-45-5-4(c), and therefore seeks a "declaratory judgment that the Marion County Prosecutor's Office cannot request that Plaintiff's utilities be shut off." [Docket No. 54 at 4.] Indiana Code § 35-45-5-4 does not define "law

---

[1]Plaintiff contends that it included Ciesielski and Daniels in this litigation pursuant to the Indiana Declaratory Judgment Act. [Docket No. 70 at 3.] However, the second amended complaint only asserts jurisdiction over these Defendants pursuant to § 1983 and does not seek declaratory relief against either of these Defendants. [*See* Docket No. 54 at 4 (requesting a declaratory judgment against the Marion County Prosecutor's Office).]

4

enforcement agency," and there is no universal or general definition of "law enforcement agency" for Title 35. Both parties cite to definitions of "law enforcement agency" that appear throughout Indiana's code, which show the phrase has multiple meanings.[2]

When presented with ambiguous statutory language, Indiana courts "seek to ascertain and give full effect to the legislature's intent." *Buchanan v. State*, 956 N.E.2d 124, 129 (Ind. Ct. App. 2011). Although neither party discusses legislative intent, "[t]he best evidence of legislative intent is the language of the statute itself, and all words must be given their plain and ordinary meaning unless otherwise indicated by statute." *Id.*; *Comm'r of Labor v. An Island, LLC*, 948 N.E.2d 1189, 1191 (Ind. Ct. App. 2011) ("The legislature's definition of a word binds us; however, when the legislature has not defined a word, we give the word its common and ordinary meaning."). The dictionary provides some guidance for the plain and ordinary meaning of "law enforcement agency." *Black's Law Dictionary* defines "law enforcement" as the "detention and punishment of violations of the law" and as "police officers and other members of the executive branch of government charged with carrying out and enforcing the criminal law." *Black's Law Dictionary* 964 (9th ed. 2009); *see also United States v. Scott*, 631 F.3d 401, 406 (7th Cir. 2011) ("[P]rosecutors retain broad discretion to enforce criminal laws because they are

---

[2]Defendants cite Indiana Code § 35-41-1-17, which states that a law enforcement agency includes "a prosecuting attorney, special prosecuting attorney, [and] special deputy prosecuting attorney . . . ." Defendants also note that Indiana Code § 5-14-3-2(m)(6) defines a law enforcement agency as "any level of government that engages in the investigation, apprehension, arrest, or prosecution of alleged criminal offenders, such as . . . prosecuting attorneys . . . ." Plaintiff responds by citing Indiana Code § 35-47-15-2, which only defines law enforcement agency as an agency or department of the state or a political subdivision of the state whose "principal function is the apprehension of criminal offenders." *See also* Ind. Code § 5-2-9-1; Ind. Code § 5-2-17-2; Ind. Code § 9-29-11.5-2; Ind. Code § 27-2-19-3. Plaintiff also cites to Indiana Code § 35-45-5-4.5, arguing that this provision distinguishes between prosecutors and law enforcement agencies.

5

required to help the President 'take Care that the Laws be faithfully executed.'"). *Oxford's Dictionary* defines "enforcement" as "the act of compelling observance of or compliance with a law, rule, or obligation." *New Oxford Am. Dictionary* 574 (2010). Neither of these definitions restricts "law enforcement agency" to police officers. Rather, these definitions are broad enough to encompass the prosecutor's office as a law enforcement agency.

Looking to the overall purpose of Indiana Code § 35-45-5-4(c), the phrase "law enforcement agency" also tilts in favor of a more expansive definition that includes prosecutors. *See An Island*, 948 N.E.2d at 1191 ("In our interpretation, we must be mindful of the purpose of the statute and the effect of such interpretation."). The purpose of Indiana Code § 35-45-5-4(c) is simple: to inhibit illegal gambling operations by disconnecting utilities. It defies logic to presume that the legislature intended to create a distinction between police agencies and the prosecutor's office that causes bureaucratic inefficiencies when it comes to notifying a utility company of illegal gambling operations. *See Cook v. Atl., Ind. Town Council*, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011) ("We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust and absurd results."). Both entities can adequately carry out Indiana Code § 35-45-5-4(c)'s objective.

The context in which "law enforcement agency" is used throughout Indiana's statutory scheme also favors including prosecutors. *Nken v. Holder*, 129 S. Ct. 1749, 1756 (2009) (explaining statutory construction can turn on the specific context in which language is used and on the broader context of a statute as a whole). Throughout Indiana's code, the legislature

required to help the President 'take Care that the Laws be faithfully executed.'"). *Oxford's Dictionary* defines "enforcement" as "the act of compelling observance of or compliance with a law, rule, or obligation." *New Oxford Am. Dictionary* 574 (2010). Neither of these definitions restricts "law enforcement agency" to police officers. Rather, these definitions are broad enough to encompass the prosecutor's office as a law enforcement agency.

Looking to the overall purpose of Indiana Code § 35-45-5-4(c), the phrase "law enforcement agency" also tilts in favor of a more expansive definition that includes prosecutors. *See An Island*, 948 N.E.2d at 1191 ("In our interpretation, we must be mindful of the purpose of the statute and the effect of such interpretation."). The purpose of Indiana Code § 35-45-5-4(c) is simple: to inhibit illegal gambling operations by disconnecting utilities. It defies logic to presume that the legislature intended to create a distinction between police agencies and the prosecutor's office that causes bureaucratic inefficiencies when it comes to notifying a utility company of illegal gambling operations. *See Cook v. Atl., Ind. Town Council*, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011) ("We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust and absurd results."). Both entities can adequately carry out Indiana Code § 35-45-5-4(c)'s objective.

The context in which "law enforcement agency" is used throughout Indiana's statutory scheme also favors including prosecutors. *Nken v. Holder*, 129 S. Ct. 1749, 1756 (2009) (explaining statutory construction can turn on the specific context in which language is used and on the broader context of a statute as a whole). Throughout Indiana's code, the legislature

primarily uses the limited definition[3] of law enforcement agency when addressing duties that police officers are traditionally responsible for performing. For example, the limited definition is used to address carrying a weapon, receiving criminal complaints, responding to accidents, and conducting investigations. *See* Ind. Code § 35-47-15-3; Ind. Code § 5-2-17; Ind. Code § 9-29-11.5; Ind. Code § 27-2-19-3. With respect to Indiana Code § 35-45-5-4(c), enforcing criminal statutes and notifying utility companies of illegal gambling operations is not a duty that is traditionally or solely within the realm of police officers. *See, e.g.,* Ind. Code § 35-45-5-4.5 ("A prosecuting attorney may send written notice to an operator under section 2(c) or 3(b) of this chapter."); *Scott*, 631 F.3d at 406 (explaining that prosecutors retain broad discretion to enforce criminal laws). In summary, the plain meaning, purpose, and context in which the phrase "law enforcement agency" is used in Indiana Code § 35-45-5-4(c) indicates that it should include the prosecutor's office. Therefore, the Magistrate Judge recommends that Defendants' motions to dismiss be granted to the extent that Plaintiff requests a declaratory judgment.

**C.    Due Process**

*1.    Ripeness*

Defendants assert that Plaintiff's due process claim is not ripe because Plaintiff's utilities have not been shut off and no final determination has been made on the termination of those services. [Docket No. 63 at 6.] The Supreme Court has explained that the ripeness doctrine is designed to:

---

[3]*See, e.g.,* Ind. Code § 35-47-15-2 (defining law enforcement agency as an agency or department of the state or a political subdivision of the state whose "principal function is the apprehension of criminal offenders."). *See also* Ind. Code § 5-2-9-1; Ind. Code § 5-2-17-2; Ind. Code § 9-29-11.5-2; Ind. Code § 27-2-19-3.

> prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties.

*Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 732–33 (1998). When assessing ripeness, courts must consider "(1) whether delayed review would cause hardship to the plaintiffs; (2) whether judicial intervention would inappropriately interfere with further administrative action; and (3) whether the courts would benefit from further factual development of the issues presented." *Id.* at 733.

Defendants attack the hardship and administrative exhaustion requirements, arguing that a final administrative determination has not been made by the utility company, and therefore Plaintiff's injuries are too speculative and premature. [Docket No. 63 at 6.] Citing *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), Defendants assert that the utility company is responsible for making the final determination about whether to discontinue Plaintiff's utilities. [Docket No. 71 at 3.] In *Craft*, a customer was delinquent in his payments, and the utility company improperly sought to terminate the customer's utilities without adequate notice of the procedures available to dispute termination. *Craft*, 436 U.S. at 14–16. To cure the due process violation, the Court found that the utility company was required to make an employee available to review payment disputes. *Id.* at 16, 20. From these facts, Defendants imply that a utility company, and not the prosecutor's office, is the "decisionmaker" when it comes to terminating or discontinuing utility services under Indiana Code § 35-45-5-4(c). [Docket No. 71 at 3.] This interpretation, however, mischaracterizes the relationship between *Craft* and Indiana Code § 35-45-5-4(c).

Unlike *Craft*, this case does not simply involve a payment dispute between a utility

company and a customer. Instead, this case involves the prosecutor's office and Indiana Code § 35-45-5-4(c). Indiana Code § 35-45-5-4(c) states that "[w]hen a public utility is notified by a law enforcement agency acting within its jurisdiction that any service, facility, or equipment furnished by it is being used or will be used to violate this section, it shall discontinue or refuse to furnish that service." The term "shall" is an imperative and requires the utility company to comply with the law enforcement agency's request. *See State v. Boles*, 810 N.E.2d 1016, 1019 (Ind. 2004) (explaining that "shall" is imperative); *State, Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc.*, 716 N.E.2d 943, 946–47 (Ind. 1999) (same). Thus, the utility company is not a decisionmaker. Although Plaintiff's utilities have not actually been disconnected, the Supreme Court has found that such legal imperatives create imminent and certain harm. *Ohio Forestry*, 523 U.S. at 733. The loss of utilities would significantly impact Plaintiff's ability to conduct business and generate revenue. *See Craft*, 436 U.S. at 20 ("Although utility service may be restored ultimately, the cessation of essential services for any appreciable time works a uniquely final deprivation."). Thus, delayed review would cause undue hardship to Plaintiff.

Defendants also contend that Plaintiff failed to exhaust administrative remedies. [Docket No. 63 at 6–7.] Defendants note that Indiana Code § 35-45-5-4(c) also states that "[t]his subsection does not prejudice the right of a person affected by it to secure an appropriate determination, as otherwise provided by law, that the service, facility, or equipment should not be discontinued or refused, or should be restored." [Docket No. 71 at 4.] However, it is not clear whether "appropriate determination" means administrative determination or judicial determination. In light of Indiana Code § 35-45-5-4(c)'s requirement that the utility company "shall" comply with a law enforcement agency's request, it does not make sense to interpret

"appropriate determination" to mean an administrative determination with the utility company. *Cook v. Atl., Ind. Town Council*, 956 N.E.2d 1176, 1178 (Ind. Ct. App. 2011) ("We presume the legislature intended logical application of the language used in the statute, so as to avoid unjust and absurd results."); *Ind. Ass'n of Beverage Retailers, Inc. v. Ind. Alcohol & Tobacco Comm'n*, 945 N.E.2d 187, 198 (Ind. Ct. App. 2011) ("When faced with two conflicting statutory provisions, we seek first to harmonize the two. If the two statutes 'can be read in harmony with one another, we presume that the Legislature intended for them both to have effect.'"). In any event, Defendants have not identified any specific administrative procedure that Plaintiff failed to exhaust, and even if they did, Defendants fail to show how such a proceeding would be meaningful in light of Indiana Code § 35-45-5-4(c)'s imperative language. *See Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) ("[A] plaintiff is excused from failing to pursue administrative remedies where 1) administrative remedies are not available or 2) pursuing those remedies would be futile."). Accordingly, the Magistrate Judge recommends that Plaintiff's due process claims be deemed ripe for judicial determination.

  *2.  Constitutionality of Indiana Code § 35-45-5-4*

The second amended complaint asserts that Plaintiff is seeking an injunction against the enforcement of Indiana Code § 35-45-5-4 because the statutory provision is unconstitutional. [Docket No. 54 at 4.] Focusing on an Indiana appellate case that rejects an equal protection and privileges and immunities challenge, Defendants argue that Indiana Code § 35-45-5-4 is constitutional. [Docket No. 63 at 12–15 (citing *Am. Legion Post No. 113 v. State*, 656 N.E.2d 1190, 1192 (Ind. Ct. App. 1995)).] Plaintiff responds that the statute is unconstitutional because it does not require notice in violation of the Due Process Clause. [Docket No. 70 at 5.] Defendants then cite *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978), for the

proposition that the utility company—not the prosecutor's office—must provide notice. [Docket No. 71 at 6.]

Defendants' reply misconstrues the issue. The question is not what entity is responsible for providing notice, but whether Indiana Code § 35-45-5-4 requires notice. The answer to that question is that Indiana Code § 35-45-5-4 does not explicitly or implicitly require notice. While the prosecutor's office provided Plaintiff with a copy of the letter sent to the utility companies, and Defendants expect the utility companies to provide notice, the statute on its face does not require any form of notice. Moreover, from Plaintiff's perspective, it does not seem to matter who provides the notice, but rather just that some entity provides notice or that Plaintiff receives some advance warning that the utilities may be shut off.

Nonetheless, the Magistrate Judge declines to address the issue at this time since Defendants failed to adequately brief the issue. As noted, Defendants' brief addresses an equal protection and privileges and immunities challenge, and Plaintiff is challenging the constitutionality of the statute on due process grounds. Also noted above, Defendants' reply fails to adequately flush out and develop the issue. *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ("We have repeatedly held that undeveloped arguments are considered waived."). The Magistrate Judge therefore recommends that Defendants' motions to dismiss be denied to the extent that Plaintiff seeks an injunction against the enforcement of Indiana Code § 35-45-5-4 on the grounds that the statute is unconstitutional.

   *3.    "Advertisement of rights"*

The second amended complaint also asserts that Defendants failed to provide Plaintiff with an "advertisement of rights" in violation of the Due Process Clause. [Docket No. 54 at 3.] The Supreme Court addressed a similar claim in *City of West Covina v. Perkins*, 525 U.S. 234

(1999), and *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978). In *Perkins*, the plaintiffs argued that "the City deprived them of due process by failing to provide them notice of their remedies and the factual information necessary to invoke the remedies . . ." when their property was seized as a result of a criminal investigation. *Perkins*, 525 U.S. at 240. The Court explained that when "police seize property for a criminal investigation, however, due process does not require them to provide the owner with notice of state-law remedies." *Id.* Because law enforcement agents provided the plaintiffs with notice that certain property was seized, the Court held that notice of state-law remedies was not required because the plaintiffs could turn to state statutes, case law, and other publicly available documents "to learn about the remedial procedures available to him." *Id.* at 241.

The Supreme Court distinguished *Perkins* from *Craft*, explaining that the plaintiff in *Craft* "who was informed that the utility planned to terminate his service could not reasonably educate himself about the procedures available to protect his interests" because administrative procedures for resolving bill disputes were not available in any publically available document. *Id.* at 242. Thus, while *Craft* "demonstrates that notice of the procedures for protecting one's property interests may be required when those procedures are arcane and are not set forth in documents accessible to the public, it does not support a general rule that notice of remedies and procedures is required." *Id.*; *see also Gates v. City of Chi.*, 623 F.3d 389, 398–401 (7th Cir. 2010) (stating that due process does not require individualized notice of internal administrative procedures).

In this case, the prosecutor's office sent Plaintiff a copy of the notice that directed the utility companies to discontinue Plaintiff's utilities. [Docket No. 54 at 3.] While the general rule is that an advertisement of rights is not required, Plaintiff's allegations are sufficient to put

12

Defendants on notice that Plaintiff is proceeding under the *Craft* exception. In other words, by alleging that no advertisement of rights was provided, the complaint implies that the public cannot reasonably access the documents necessary to learn the remedies and procedures available to dispute having their utilities disconnected. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inference that the defendant is liable for the misconduct alleged."). Based on this allegation, Defendants must identify a statute or other publicly available document to succeed in dismissing Plaintiff's due process claim. Defendants have failed to do so, perhaps because they did not come across *Perkins* in their research. *See Clarett v. Roberts*, 657 F.3d 664, 674 (7th Cir. 2011) ("[I]t is not this court's responsibility to research and construct the parties' arguments . . . ."). Accordingly, the Magistrate Judge recommends that Defendants' motions to dismiss be denied with respect to this due process claim.

### D. Equal Protection Clause

#### 1. *Standing*

The second amended complaint also alleges that Defendants selectively prosecute illegal gambling operations in violation of the Equal Protection Clause. [Docket No. 54 at 3.] Defendants argue that Plaintiff does not have standing because Plaintiff "has never been prosecuted or even arrested for illegal gambling." [Docket No. 63 at 9.] Plaintiff responds by invoking third-party standing. [Docket No. 70 at 6.]

"Despite the general impediment to advancing someone else's interests, the Supreme Court has held that a person may litigate another's rights in his own cause so long as three criteria are satisfied: (1) the litigant must have suffered an injury in fact; (2) the litigant must have a close relation to the third party; and (3) there must exist some hindrance to the third

party's ability to protect his or her own interest." *Marion-Garcia v. Holder*, 647 F.3d 666, 670 (7th Cir. 2011) (citing *Powers v. Ohio*, 499 U.S. 400 (1991)). While Plaintiff does not allege to have been prosecuted or arrested, Plaintiff asserts that its injury in fact is an imminent threat of utility loss. [Docket No. 70 at 6.] Plaintiff also asserts that it has a close relationship to the third party because the illegal gambling operation is located in an adjacent unit and the prosecutor's office is attempting to disconnect the utilities in the entire building. [*Id.* at 7.] Assuming that these allegations satisfy the first two requirements of third-party standing, Plaintiff still fails to demonstrate that the third party is hindered in protecting their own rights.

Plaintiff has not specifically identified a third party. Rather, Plaintiff vaguely refers to the third party as the alleged gamblers. [*Id.*] This description is insufficient to identify a third party for the purpose of determining whether the third party can protect their own rights. Nonetheless, Plaintiff claims that the third party cannot assert its own rights because (1) "the nature of the charges as compared to the complexity of the defense" and (2) "the prosecution of gamblers in this manner would 'materially impair' rights of third parties to be free from discrimination." [*Id.*] This explanation fails to explain what aspect of the illegal gambling charge is so complex that it hinders the third party's ability to protect their own rights. Moreover, it is unclear what "in this manner" means, and Plaintiff does not explain how the third party's rights would be "materially impair[ed]." Such undeveloped conclusory assertions are insufficient to show some hindrance to the third party's ability to protect their own interests. *See Harvey v. Town of Merrillville*, 649 F.3d 526, 532 (7th Cir. 2011) ("We have repeatedly warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived."). Accordingly, Plaintiff does not satisfy the requirements for third-party standing, and therefore the Magistrate Judge recommends that Defendants' motions to dismiss be

granted with respect to Plaintiff's equal protection claim.

   2.   *Pleading an equal protection violation*

Even if Plaintiff established third-party standing, Plaintiff has not properly pleaded an equal protection claim. A selective-prosecution claim requires Plaintiff to plead that the third-party was "singled out for prosecution where others were not and that the selection was based on an impermissible ground, such as race or religion." *United States v. Fletcher*, 634 F.3d 395, 406–07 (7th Cir. 2011). The second amended complaint states that "[t]he gambling operation that Plaintiff was allegedly providing assistance to was a 'peashake house.' This is a gambling operation predominately patronized and owned by African Americans." [Docket No. 54 at 3.] The complaint goes on to state that a review of gambling arrests and prosecutions show that Defendants selectively target peashake houses. [*Id.*]

Plaintiff, however, fails to assert that the prosecutor was motivated by a discriminatory purpose. While Plaintiff alleges that a review of illegal gambling arrests and prosecutions show a racial disparity, this allegation fails to distinguish between a legal system that produces a racially disproportionate number of prosecutions and a prosecutor that is motivated by race. *United States v. Moore*, 543 F.3d 891, 900 (7th Cir. 2008) (explaining the decision to prosecute must be based on an arbitrary classification of race). Plaintiff must allege that the prosecution "had a discriminatory effect and that it was motivated by a discriminatory purpose." *United States v. Darif*, 446 F.3d 701, 708 (7th Cir. 2006). Moreover, while the complaint alleges that peashake houses are treated differently than similarly situated illegal gambling operations, the complaint does not go beyond this bare allegation and identify any similarly situated illegal gambling operation. *See LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 942 (7th Cir. 2010) ("[D]ismissal at the pleading stage was appropriate because LaBella failed to allege facts

tending to show that it was similarly situated to any of the comparators.") (citing *Stachowski v. Town of Cicero*, 425 F.3d 1075, 1078 (7th Cir. 2005) ("[A]ffirming dismissal of class-of-one equal protection claim where complaint failed to identify similarly situated individuals.")); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Consequently, these flaws serve as an additional basis to dismiss Plaintiff's equal protection claim. The Magistrate Judge therefore recommends that Defendants' motions to dismiss be granted with respect to Plaintiff's equal protection claim.

This raises the question of whether the dismissal of Plaintiff's equal protection claim should be with or without prejudice. In considering the question, Plaintiff has already been granted leave to amend the complaint on two occasions. [Docket Nos. 42, 54.] Thus, having filed three complaints (the original plus two amendments), it is difficult to fathom that Plaintiff should be permitted yet another bite at the apple. *Brownstone Publ'g, LLC v. AT&T, Inc.*, No. 1:07-cv-1630-SEB-JMS, 2009 WL 799546, at *3 (S.D. Ind. Mar. 24, 2009) ("In short, neither a Rule 59(e) motion nor a Rule 15 motion for leave to amend following dismissal should allow a plaintiff a 'second bite at the apple.'"). This is particularly so given that any additional attempts to amend the complaint would fall far outside the July 1, 2011, Case Management Plan deadline for seeking leave to amend. [Docket No. 27 at 5.] The Magistrate Judge therefore recommends that Plaintiff's equal protection claim be dismissed with prejudice.

**IV.    Conclusion**

In summary, the Magistrate Judge recommends that (1) Ciesielski and Daniels in their official and personal capacities should be dismissed from this case with prejudice, (2) Plaintiff's request for declaratory relief should be dismissed with prejudice, (3) Plaintiff's due process

claims should survive dismissal, but subject to the limitations set forth above, and (4) Plaintiff's equal protection claim should be dismissed with prejudice. Accordingly, the Magistrate Judge recommends that Defendants' motions to dismiss [Docket Nos. 62, 68] be granted in part and denied in part. Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Dated: 02/02/2012

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Copies to:

David A. Arthur
INDIANA OFFICE OF THE ATTORNEY GENERAL
David.Arthur@atg.in.gov

Jennifer Lynn Haley
CITY OF INDIANAPOLIS, CORPORATION COUNSEL
jhaley@indy.gov

Katie J. Kawiecki
OFFICE OF CORPORATION COUNSEL
kkawiecki@indy.gov

Adam Lenkowsky
ROBERTS & BISHOP
alenkowsky@roberts-bishop.com

Kenneth T. Roberts
ROBERTS & BISHOP
ktrjustice@aol.com

Tasha Rebecca Roberts
ROBERTS AND BISHOP
troberts@roberts-bishop.com